Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SELECTIVE INSURANCE COMPANY OF AMERICA**<br><br>Plaintiff,<br><br>v.<br><br>**DONNA M. LASCOLA TITSWORTH,** *et al.*,<br><br>Defendants. | Civil Action No. 18-13847 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is the motion of plaintiff Selective Insurance Company of America ("Selective" or "Plaintiff") for partial summary judgment for contractual indemnification pursuant to Federal Rule of Civil Procedure 56(c). (D.E. No. 61). Defendants Donna M. LaScola Titsworth and Charles Titsworth (collectively, "Defendants") oppose the motion and cross-move for summary judgment in their favor. (D.E. No. 62). Having considered the parties' submissions, the Court decides this matter without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court GRANTS Plaintiff's motion and DENIES Defendants' cross-motion.

**I.     BACKGROUND**[1]

Third party Natelco Corporation was engaged in the electrical contracting business and, in connection with that business, was required to provide certain bonds in connection with certain of

---

[1] The background facts are drawn primarily from the parties' statements of material facts, which are undisputed. (D.E. No. 61-2 ("Pl. SUMF"); D.E. No. 62-1 ("Defs. Counter SUMF"); D.E. No. 63-2 ("Pl. Reply SUMF")). The Defendants did not respond to Plaintiff's statement of facts and thus those facts are deemed admitted. Fed. R. Civ. P. 56(e)(2); L. Civ. R. 56.1(a). The Defendants did submit one counter statement of material fact, which Plaintiff admits.

its construction contracts. (Pl. SUMF ¶¶ 1–2). Plaintiff agreed to act as surety to issue bonds on behalf of Natelco. (*Id.* ¶ 3). On May 4, 2016, Defendants executed a general agreement of indemnity in favor of Plaintiff, in which the Defendants agreed to, *inter alia*, indemnify Plaintiff "from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature . . . ." (*Id.* ¶ 4; D.E. No. 61-4, Exhibit A to the Affidavit of Jonathan Panico ("Panico Aff.") ("Indemnity Agreement") ¶ 3). The Indemnity Agreement further specifies the following:

> "[t]he liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon . . . made by [Selective] under [Selective's] belief that (1) [Selective] was or might be liable theretofore or (2) the payments were necessary or advisable to protect any of [Selective's] rights or to avoid or less[e]n [Selective's] liability or alleged liability.

(Pl. SUMF ¶ 5; Indemnity Agreement ¶ 3). Under the Indemnity Agreement, Plaintiff has the right to "adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it," and Plaintiff's decision thereon is considered final and binding on the indemnitors. (Pl. SUMF ¶ 8; Indemnity Agreement ¶ 7).

Between 2016 and 2018, Plaintiff, in its role as surety, issued nine performance and payment bonds on behalf of Natelco in connection with nine separate construction projects. (Pl. SUMF ¶¶ 10–27). Plaintiff also issued three bonds on behalf of Natelco in connection with the payment of wage and fringe benefits. (*Id.* ¶¶ 28–33).

After its issuance of the bonds, beginning in 2018, Plaintiff began receiving claims for payments on the payment bonds and on the wage and benefits bonds from certain of Natelco's subcontractors, laborers, and/or suppliers on various projects, alleging nonpayment in a total amount exceeding $1,500,000.00. (*Id.* ¶ 34). Plaintiff also received performance bonds claims on four construction projects. (*Id.* ¶ 35). (Altogether, the "Bond Claims").

Around the same time, on or about June 26, 2018, Natelco filed for bankruptcy under

2

Chapter 11 of the United States Bankruptcy Code. (*Id.* ¶ 36). Plaintiff appeared in the Natelco Bankruptcy proceeding on July 5, 2018. (*Id.* ¶ 37). Natelco's bankruptcy petition was converted into a Chapter 7 liquidation proceeding. (*Id.* ¶ 38).

On September 13, 2018, Plaintiff filed the instant lawsuit against Defendants (as well as other individuals who have since been dismissed from this lawsuit (the "Cooke Defendants")) alleging various breach of contract claims and requesting, *inter alia*, "contractual indemnification for all losses incurred and to be incurred by Selective . . . ." (D.E. No. 1, Complaint ¶¶ 53–57).[2]

On July 15, 2020, Plaintiff filed the instant motion for partial summary judgment on its contractual indemnification claim. (D.E. No. 61). Defendants filed an opposition to the motion and a cross-motion for summary judgment. (D.E. No. 62 ("Defs. Opp. Br.")). The motions are fully briefed and ripe for determination. For the following reasons, Plaintiff's motion is GRANTED, and Defendants' cross-motion is DENIED.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the non-existence of a "genuine issue" is on the party moving

---

[2]   Plaintiff also brought claims for quia timet and for specific performance of the Indemnity Agreement (i) to enforce its demand for collateral security; (ii) to enforce its agreement to inspect books and records; (iii) to compel Defendants to direct obligees to remit contract balances and proceeds to Plaintiff. (Compl. ¶¶ 38–52 & 58–61). Those claims are not the subject of this motion.

3

for summary judgment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party must satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2002) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

## III. DISCUSSION

Plaintiff asserts a straightforward argument in support of its motion: (i) Plaintiff and Defendants entered into a binding Indemnity Agreement that contained unambiguous terms; (ii) those terms require Defendants to indemnify Plaintiff for any and all liability incurred in connection with the performance of its bond obligations; (iii) Plaintiff incurred losses of $1,315,028.89[3] in performance of the bonds at issue; and (iv) therefore, Defendants are obligated to repay Plaintiff for all of their losses incurred. (D.E. No. 61-1 ("Pl. Mov. Br.") at 14–20). Defendants do not dispute that they entered into the Indemnity Agreement; nor do they dispute

---

[3] As discussed in more detail *infra*, this amount represents an amended loss amount; Selective originally claimed $1,809,263.36 in losses. (Pl. SUMF ¶ 57).

any of the terms of the agreement. (*See generally* Defs. Opp. Br.). Rather, the crux of the parties' dispute is what evidence Selective must put forward to demonstrate its entitlement to the damages it seeks.

Plaintiff relies on a provision in the Indemnity Agreement which provides the following: "vouchers or other evidence of [ ] payments sworn to by a duly authorized representative of [Selective] shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to [Selective]." (Pl. SUMF ¶ 7; Indemnity Agreement ¶ 3). Based on the unambiguous language of this provision, Plaintiff argues that it has provided prima facie evidence of liability in the form of copies of checks, releases and assignments, settlement agreements, and an itemized loss report sworn to in the Panico Affidavit, and that nothing more is required. (Pl. Mov. Br. at 19).

In response, Defendants claim that under New Jersey law, because Plaintiff settled the Bond Claims, Plaintiff is required to demonstrate that the amounts it paid to settle the Bond Claims were reasonable. (Defs. Opp. Br. at 3). And according to Defendants, because Selective has not put forward—and cannot put forward—any evidence that its payments were reasonable, Plaintiff's motion should be denied, and their cross-motion should be granted. (*Id.* at 3–4).[4] In the alternative, Defendants argue that even if their legal position is incorrect, "there are genuine factual, and legal, disputes as to the amounts [Plaintiff] claims." (*Id.* at 6).

The Court starts with an analysis of the law of indemnity agreements and the relevance of the prima facie evidence language and then turns to Defendants' challenges to the amount of damages Plaintiff claims.

---

[4] Defendants seem to address the fact of liability and the amount of liability in overlapping fashion. For clarity purposes, the Court endeavors to address the fact of and the amount of liability separately throughout this Opinion.

5

### A.     Indemnity Agreements and Prima Facie Evidence Clause

"Indemnity agreements are interpreted in accordance with general principles of contract law . . . ." *IFC, Interconsult, AG v. Safeguard Int'l Partners, LLC,* 438 F.3d 298, 317 (3d Cir. 2006); *see also Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1159 (N.J. 1986). Under New Jersey law, courts must enforce unambiguous contracts as written. *See Cty. of Morris v. Fauver,* 707 A.2d 958, 969 (N.J. 1998); *Kampf v. Franklin Life Ins. Co.,* 161 A.2d 717, 720 (N.J. 1960). Only "[i]n cases of ambiguity" will the contract be "strictly construed against the indemnitee." *SGS U.S. Testing Co., Inc. v. Takata Corp.*, No. 09-6007, 2016 WL 1382364, at *8 (D.N.J. Apr. 6, 2016). "Finally, summary resolution of indemnity disputes with unambiguous contractual provisions is appropriate." *Centennial Ins. Co. v. Horizon Contracting Co.*, No. 05-3917, 2008 WL 4791657, at *6 (D.N.J. Oct. 31, 2008).

Here, the parties do not dispute that the prima facie evidence clause is unambiguous or that unambiguous provisions, generally speaking, should be strictly construed. Pursuant to these ordinary principles of contract construction, then, Plaintiff's position—that it need only come forward with "vouchers or other evidence of such payments sworn to by a duly authorized representative" to demonstrate the fact and extent of the liability of the Indemnitors—seems to be the correct one. (Pl. SUMF ¶ 7; Indemnity Agreement ¶ 3); *see, e.g.*, *XL Specialty Ins. Co. v. Torchio Bros.*, No. 07-2330, 2008 WL 2875448, at *2 (D.N.J. July 23, 2008) ("The clear and unambiguous language of the Indemnity Agreement contractually obligates the Indemnitors to indemnify XL from losses, costs and expenses incurred in connection with the Bonds."); *Andre Const. Assoc., Inc. v. Catel, Inc.*, 681 A.2d 121, 123 (N.J. Super. 1996) ("Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions.").

Nevertheless, Defendants argue that regardless of the terms of the agreement, Plaintiff's prima facie evidence is insufficient. Defendants cite to a couple of New Jersey cases which, according to Defendants, require that Plaintiff come forward with evidence that the settlement amounts it paid were reasonable. (Defs. Opp. Br. at 3–4; D.E. No. 64 ("Defs. Reply Br.") at 4 (citing *Serpa v. New Jersey Transit*, 951 A.2d 208 (N.J. Super. Ct. App. Div. 2008), *and Stern v. Larocca*, 140 A.2d 403 (N.J. Super. Ct. App. Div. 2008))). These cases are not persuasive, however, because both involved indemnification rights related to settlement agreements entered in tort cases, rather than the type of contract claims involved here, and neither is factually similar to the present case.

Specifically, both cases involved situations where the defendant property owners hired general contractors for construction projects, and an employee of the general contractor was injured at the construction site. *Serpa*, 951 A.2d at 211; *Stern*, 140 A.2d at 404. In each case, the injured employee sued the property owner rather than the general contractor. *Serpa*, 951 A.2d at 211; *Stern*, 140 A.2d at 405. The defendant property owner in each case settled with the injured employee and then sought to recover from the general contractor based on an indemnification agreement. *Serpa*, 951 A.2d at 211; *Stern*, 140 A.2d at 405. Although the reasonableness of the settlement was discussed by each court, it was not the focus of either opinion. *Serpa*, 951 A.2d at 211 & 213 (noting that there was no dispute over the reasonableness of the settlement); *Stern*, 140 A.2d at 410–11 (opining that a settlement does not have the automatic effect of defeating an indemnification claim and stating that it is for the fact-finder to determine on remand whether the settlement payment was reasonable under all of the circumstances and made in good faith). Moreover, there is no indication in either case that the relevant indemnification agreement

contained a prima facie evidence clause like the one present here and, therefore, there is no discussion of what effect such a clause has on any "reasonableness" standard.

Thus, contrary to Defendants' position, these cases do not clearly establish that a plaintiff seeking contractual indemnification must prove the reasonableness of any settlements, notwithstanding a prima facie evidence clause such as the one present here. The parties have not presented—and the Court has not found—a factually analogous New Jersey case on point. However, case law from this Circuit sheds additional light on how a Court should handle a prima facie evidence clause such as the one in the Indemnity Agreement.

In *Fallon Electric Company v. Cincinnati Insurance Company*, the Third Circuit was faced with a similar question under Pennsylvania law. 121 F.3d 125, 128 (3d Cir. 1997). There, notwithstanding a prima facie evidence clause in an indemnity agreement, the district court imposed the burden on the indemnitee to prove that the attorney's fees it sought were incurred out of reasonable necessity. *Id.* at 127. The Third Circuit explained that although "the district court was correct that several courts have imposed on indemnitees the burden of proving the reasonable necessity of attorney's fees sought pursuant to indemnity agreements . . . none of the cases cited involved indemnity agreements that contained the same prima facie evidence language at issue." *Id.* at 128. Because Pennsylvania courts had not ruled on the issue of the effect of such language, the Third Circuit turned to other courts for guidance. *Id.* Ultimately, the Third Circuit concluded that "the 'prima facie evidence' language at issue here shifts to the indemnitor the burden of proving the fees are excessive. How the indemnitor may prove that the fees may not be recovered is dependent upon the language of the indemnity agreement." *Id.*

Other judges within this district have similarly ruled that a prima facie evidence clause shifts the burden of proving the fact and amount of liability to the indemnitor. *See Centennial*,

8

2008 WL 4791657, at *9 ("Courts have long upheld *prima facie* evidence clauses and shifted the burden to the non-movant to show that a rational factfinder could determine that liability has not attached."); *Guarantee Co. of N. Am. USA v. SBN Enterprises, Inc.*, No. 09-5399, 2011 WL 3205318, at *3 (D.N.J. July 27, 2011) (recognizing a prima facie evidence clause as "valid and enforceable" and relying on an itemized statement in an affidavit to grant an unopposed partial summary judgment motion).

Based on the foregoing cases and the general principle that unambiguous contractual provisions should be enforced as written, the Court rejects Defendants' argument that, notwithstanding the prima facie evidence clause, Plaintiff bears the burden of demonstrating the settlement amounts are reasonable. The proper framework for the Court's analysis is whether Plaintiff has come forward with prima facie evidence as to the fact and amount of Defendants' liability and, if so, whether Defendants have shown that a rational fact-finder could determine that liability has not attached and/or that Selective is not entitled to the amounts it claims. *See Centennial*, 2008 WL 4791657, at *9–10.

### B.  Liability

The issue of liability does not require extended discussion. The unambiguous language of the Indemnity Agreement obligates the Defendants to indemnify Plaintiff "from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature" in connection with performing its bond obligations. (Pl. SUMF ¶ 4). Moreover, it is undisputed that Selective incurred losses and expenses consistent with its bond obligations, including amounts paid to settle the Bond Claims, attorneys' fees, and other incidental costs. (*Id.* ¶¶ 41–57; *see also* Defs. SUMF ¶ 1 (acknowledging that Selective paid to settle all of the contractor claims set forth in its SUMF). Thus, according to the plain language of the Indemnity Agreement and the undisputed facts of this

9

case, the Defendants are liable to Selective for its losses and expenses. *Guarantee Co. of N. Am. USA*, 2011 WL 3205318, at *3.

### C. Damages

As to damages, Plaintiff provides prima facie evidence of its damages in the form of the Panico Affidavit and the exhibits attached thereto. (*See* Panico Aff. ¶¶ 45–63 & Exhibits S–X). Defendants do not meaningfully dispute that Plaintiff has provided prima facie evidence of its damages.[5] Rather, as set forth above, Defendants argue that something more is required. Because the Court has already rejected this argument in light of the prima facie evidence clause, the Court turns to Defendants' alternative arguments—that there are genuine factual and legal disputes as to the amount of damages Plaintiff seeks.

#### i. Damages Already Recovered

First, Defendants argue that Selective's damages claim is inflated because "Selective fails to give the Defendants credit for the settlement amount it has already collected from previous defendants." (Defs. Opp. Br. at 6).[6]

The Defendants provide the Court with no relevant factual or legal bases for this assertion. Defendants rely on the "universally accepted principle that one cannot be paid twice for his or her damages," which it assumes "needs no citation." (*Id.*). As for facts, Defendants rely on the fact that the Cooke defendants (who were also indemnitors) were dismissed from this lawsuit, stating

---

[5] In their reply brief, Defendants argue for the first time that the Panico Affidavit is not proper evidence because Mr. Panico states that he is "fully familiar" with the facts of the case rather than using the exact language from Federal Rule of Civil Procedure 56(c)(4), which states that affidavits must be made on "personal knowledge." (Defs. Reply. Br. at 8). This argument, which focuses solely on the precise language used, emphasizes form over substance. And Defendants do not provide the Court with any reason to question that Mr. Panico, a Senior Bond Claims Representative of Selective, has personal knowledge of the facts in his affidavit. Thus, the Court rejects this argument.

[6] Defendants also argued that the damages amount was inflated because Selective did not give Defendants a credit for $371,653 Selective received on one of the contracts for which it seeks reimbursement. (Defs. Opp. Br. at 7). Selective has since updated its damages amount to reflect this credit. (*See* D.E. No. 63 ("Pl. Reply Br.") at 2 n.1).

that "the math is in the margin." (*Id.* at 6–7; Defs. Reply. Br. at 2–3).[7] However, even accepting that a settlement was reached, Defendants proffer no evidence to show that there is an overlap between the damages requested here for Defendants' liability under the Indemnity Agreement and the settlement with the Cooke Defendants. *See Fin. Cas. & Sur., Inc. v. Bonino*, No. 11-4316, 2014 WL 6471477, at *2 (D.N.J. Nov. 18, 2014) ("Without any evidence that the judgment against the [ ] Defendants actually would result in a double recovery for the same liability, this Court must deny the motion for setoff."); *Provident Bank v. Antonucci*, No. 12- 07133, 2014 WL 7051781, at *8 (D.N.J. Dec. 12, 2014) (finding no issue of material fact on amount of damages where defendant relied on unsupported assertions); *see also Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) ("In attempting to defeat summary judgment, '[s]peculation and conclusory allegations do not satisfy [the nonmoving party's] duty.'") (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999)). Accordingly, Defendants have not met their burden to identify those facts of record which would contradict the facts identified by Plaintiff with respect to damages. *Corliss*, 247 F. App'x at 354.

      **ii.**    **Newly Disclosed Damages**

Second, Defendants argue that Plaintiff should be prohibited from pursuing damages that were not disclosed during discovery in Plaintiff's May 28, 2019 Loss Report. (Defs. Opp. Br. at 7–8). According to Defendants, Plaintiff's failure to supplement its discovery responses with the additional damages now claimed constitutes a discovery violation, and Plaintiff should be

---

[7] The Cooke Defendants were dismissed from this lawsuit on December 3, 2018. (D.E. No. 30). The Court's review of the docket reveals that Plaintiff did disclose a settlement with the Cooke Defendants in the parties' joint discovery plan submitted on January 8, 2019. (D.E. No. 34). In that filing, Plaintiff took the position that the terms of the settlement were confidential, and Defendants stated that they would be willing to enter into a protective order regarding the contents of that agreement. (*Id.* at 2). It is not clear if this issue was raised again, and if so, how it was resolved. If Defendants did seek and obtain discovery regarding the settlement, they have not presented as much to the Court. If Defendants did not seek or obtain the relevant discovery, they have not explained why they did not or could not do so.

11

prohibited from pursuing these damages pursuant to Federal Rules of Civil Procedure 37(c)(1)(c) and 37(b)(2)(A)(ii).

Before excluding evidence under Rule 37, a district court must consider four factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

As to the first and second factors, Defendants have made no claim of prejudice. At most, it seems, Defendants were prejudiced by not knowing the *amount* of damages Plaintiff sought to recover under the Indemnity Agreement. However, the instant case is unlike others where courts excluded damages under Rule 37, in part, because the plaintiff sought to recover entirely new *categories* of damages. *See Zarour v. Am. Sec. Ins. Co.*, No. 13-6384, 2015 WL 5167164, at *4–5 (D.N.J. Sept. 3, 2015); *Aetna Inc. v. Mednax, Inc.*, No. 18-2217, 2021 WL 949454, at *5 (E.D. Pa. Mar. 12, 2021). In those cases, the defendants were prejudiced because they were unable to seek discovery that could help defend against an entire category of damages. Here, Plaintiff seeks to recover for additional losses it suffered by paying out additional claims under the Bonds after it had produced the May 28, 2019 Loss Report. These types of damages—stemming from the Bond Claims—have been at issue since the initiation of this lawsuit. (*See* Compl. ¶¶ 31–32).

As to the third factor, the Court sees no reason why considering this evidence would disrupt the orderly and efficient resolution of this case. Either the Court accepts the evidence and awards Plaintiff the total amount of requested damages, or the Court declines to consider the evidence and

deducts the undisclosed damages from Plaintiff's award. (*See* Pl. Reply at 18–19).[8] Again, this situation is unlike some other cases in which allowing the evidence would require the reopening of discovery, delaying final resolution of the case. *See e.g.*, *Zarour*, 2015 WL 5167164, at *4.

Finally, as to the fourth factor, based on the current record, the Court finds no evidence of bad faith or willfulness. Plaintiff explains that it did not initially disclose the additional sums because it continued to incur losses after the discovery end date. Admittedly, while this may explain why the damages were not initially disclosed, it is not an explanation for Plaintiff's failure to supplement its damages calculation. *See* Fed. R. Civ. P. 26(e). Nevertheless, there is no evidence that Plaintiff acted willfully or in bad faith by failing to supplement.

In sum, the factors weigh in favor of allowing the evidence of Plaintiff's damages incurred after the May 2019 Loss Report. The Court therefore allows this evidence and finds that Plaintiff is entitled to those damages.

### iii. Legal Fees and Costs

Third, Defendants argue that Plaintiff should not be permitted to recover the amount it seeks in legal and consulting costs because Plaintiff has not demonstrated that such expenses are reasonable, and it is Plaintiff's burden to do so. (Defs. Opp. Br. at 8). This argument fails because it is dependent on the same rational that the Court rejected above—that it is Plaintiff's burden in the first instance to prove that the costs and fees are reasonable. As the Court explained above, the initial question is whether Plaintiff has, pursuant to the Indemnity Agreement, put forth prima facie evidence of its attorneys' fees and costs. Plaintiff has done so in the form of an affidavit outlining its attorneys' fees and costs. (Panico Aff. ¶¶ 51–53); *see City Select Auto Sales, Inc. v.*

---

[8] In its reply brief, Plaintiff suggests that the Court deduct these damages from its total award *if* the Court were to find that these additional losses should be excluded. (Pl. Reply. Br. at 18–19). Defendants seemingly understand this argument to be a "withdrawal" of the additional damages claims. (Defs. Reply. Br. at 3–4). However, the argument is very clearly made in the alternative to Plaintiff's primary argument that the damages should be allowed.

*David/Randall Assocs., Inc.*, 96 F. Supp. 3d 403, 409 n.4 (D.N.J. 2015) ("[T]he Court may rely upon an affidavit for purposes of summary judgment . . . to the extent such affidavit constitutes evidence at least potentially admissible at trial."). Thus, the burden shifts to Defendants to show that a rational fact-finder could determine that Plaintiff is not entitled to the amounts it claims. Defendants have not attempted to do so here: other than arguing that Plaintiff has not proved the reasonableness of the fees, Defendants have not made any factual challenge to the amounts requested. (*See* Defs. Opp. Br. at 8).

### iv.     Claims Resulting from Unsuccessful Litigation Strategy

Fourth, Defendants argue that Plaintiff should not be reimbursed for claims as to which it "unilaterally pursued an unsuccessful litigation strategy." (*Id.* at 8–9). Specifically, Defendants explain that, in the Natelco bankruptcy proceeding, Plaintiff joined third-party Structural Engineering Group, Inc. ("SEG") in trying to argue that SEG had the first right to sell certain of Natelco's electrical fixtures. (*Id.*). Had Plaintiff and SEG been successful, Plaintiff's damages would have been mitigated by $186,927. (*Id.* at 9; Pl. Reply. Br. at 11). Ultimately, the bankruptcy court determined that Natelco's financial institution had first right to the fixtures over SEG. (Defs. Opp. Br. at 9). Because SEG did not have the right to sell the fixtures, Plaintiff was required, under the Indemnity Agreement, to pay SEG $186,927. (*Id.*; Pl. Reply. Br. at 11).

Defendants make a legal challenge to this category of damages, arguing that they should not be obligated to reimburse Selective because "[i]t is well-settled law in New Jersey that an indemnitee has no right to recovery when it takes unilateral, unsuccessful action and the indemnitor is passive, unless there is a clause in the indemnification agreement specifically providing for such recovery and so reflecting the parties' intent." (Defs. Opp. Br. at 9 (citing *Stern*, 140 A.2d at 406

14

and *Rommell v. US Steel*, 168 A.2d 437, 443 (N.J. Super. Ct. App. Div.1961)). But Defendants stretch the holdings of *Stern* and *Rommel* and their application to the present case.

To start, neither *Stern* nor *Rommel* involved the precise issue raised here—whether Plaintiff should be prohibited from recovering the amounts paid to SEG because it attempted to mitigate those damages and was unsuccessful. Rather, both *Stern* and *Rommel* were tort cases wherein the issue was the effect of the plaintiff's own negligence on the indemnitor's liability. In both cases, the Court explained that whether the indemnitee's own negligence bars some or complete recovery will depend on the language of the contract, and the surrounding circumstances relevant to the parties' intent. (*Stern*, 140 A.2d at 406; *Rommel*, 168 A.2d at 443). The present case is a contract case that does not involve any allegations of negligence. As such, the holdings of these cases cannot be stretched so far as to bar an indemnitee's right to recovery when it takes unilateral unsuccessful action. And the Court finds no other support for this argument.

Thus, the Court rejects Defendants' argument that these damages cannot be recovered as a matter of law.

### v.     **Bad Faith and Unreasonableness**

Finally, in their reply brief, Defendants argue that "assuming an initial burden shift from indemnitee to indemnitor regarding reasonableness, there is evidence of unreasonableness and bad faith, enough to shift the burden back to Selective." (Defs. Reply. Br. at 5). It is not clear whether this argument is intended to challenge Defendants' liability altogether, or the amount of damages claimed; regardless, it is unpersuasive.

To start, the majority of Defendants' argument focuses on the absence of evidence of good faith, rather than any evidence of bad faith. Specifically, Defendants argue that "on at least three occasions, Selective had the opportunity to tell the Court it was making, or had made, reasonable

settlements, and did or was doing so in good faith and, on each occasion, it failed to do so." (*Id.* at 6). According to Defendants, the absence of evidence of good faith is sufficient to shift the burden back to Plaintiff. In other words, Defendants do not assume any burden shift at all and attempt to argue, again, that the burden is on Plaintiff in the first instance to prove reasonableness and good faith. The Court rejects this argument for the same reasons discussed in Section III.A. *supra*.

As for actual arguments pertaining to bad faith and unreasonableness, Defendants point to three "facts"—that Plaintiff (i) "deliberately" concealed its settlement with the Cooke Defendants; (ii) did not disclose known credits; and (iii) disregarded discovery obligations but still made a claim. (*Id.*). These facts, which are mostly unsupported, conclusory allegations, are irrelevant to the issue whether Plaintiff settled any of the Bond Claims in bad faith or whether the amounts paid were unreasonable.

Accordingly, the Court rejects Defendants' argument that there is any evidence of unreasonableness or bad faith. *See Allied World Ins. Co. v. Perdomo Indus., LLC*, No. 17-3027, 2018 WL 4623160, at *6 (E.D. Pa. Sept. 25, 2018) (granting summary judgment in favor of indemnitee where indemnitors "fail[ed] to raise a genuine issue of fact concerning whether [indemnitee] acted in bad faith or made fraudulent payments under the . . . performance bond.").

### IV. CONCLUSION

For the reasons set forth above, and for other good cause shown, the Court GRANTS Plaintiff's motion and DENIES Defendants' cross-motion. An appropriate Order accompanies this Opinion.

Date: September 1, 2021

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**